# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC, ) | Case No. 8:23-cv-1014 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DRACULA'S LEGACY, LLC, ELENA ) | |
| RAMONA NEAMTU, ) | |
| and ) | |
| VASILE RELU NEAMTU. ) | |
| ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DILUTION/TARNISHMENT AND DEMAND FOR JURY TRIAL

Plaintiff Vampire Family Brands, LLC hereby alleges and asserts:

## I.    JURISDICTION AND VENUE

1.    Plaintiff brings this action for injunctive relief and damages arising out of the unauthorized, unfair, and deceptive competitive practices of Defendants, and each of them, in connection with the commercial use and exploitation of trademarks in violation of the Lanham Act.

2.    This action arises under the Trademark Laws of the United States, including, particularly, Section 43 of the Lanham Act, 15 U.S.C. § 1125.

1

Jurisdiction is conferred on this Court by 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), in that this case arises under the Trademark Laws of the United States, 15 U.S.C. Sections 1051, *et seq.*

3.    Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (2) because at least one Defendant resides within this district and a substantial part of the events giving rise to the claims occurred in this district.

## II.    THE PARTIES

4.    Plaintiff, Vampire Family Brands, LLC ("Vampire Family Brands") is a Delaware limited liability company with its main business office located in Los Angeles County, California.

5.    Defendant Dracula's Legacy, LLC ("Dracula's Legacy") is, upon information and belief, a Florida limited liability company based in St. Petersburg, Florida.

6.    Defendant Elena Ramona Neamtu is, upon information and belief, a managing officer of Dracula's Legacy and resides in Florida.

7.    Defendant Vasile Relu Neamtu is, upon information and belief, another managing officer of Dracula's Legacy and resides in Florida.

8.    Plaintiff is informed, believes, and alleges that, at all times herein mentioned, each of the Defendants were the agents, servants, employees, or attorneys of their codefendants and, in doing the things hereinafter alleged, were

2

acting within the purpose, course, and scope of such agency and employment, and with the authority, permission, and consent of their codefendants.

### III.     FACTS

### A.  Plaintiff's Vampire Family Trademarks

9.      Vampire Family Brands, via its predecessors in interest, has been marketing for many years food and beverages under several federally registered trademarks consisting of or relating to the terms VAMPIRE and DRACULA (collectively, the Vampire Family marks). The Vampire Family marks include the following federal registrations, many of which are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065:[1]

| Mark | Reg. No. | Goods/Services |
|---|---|---|
| DRACULA | 3319536* | Wine |
| | 6562370 | Hamburger sandwiches |
| FANGRIA | 4451648 | Sangria; wine |
| SIP THE BLOOD OF THE VINE | 3079403* | Wine and distilled spirits |
| TASTE THE IMMORTALITY | 3167606* | Wine and distilled spirits |
| VAMPIRE | 2263907* | Wine |

---

[1] The marks denoted by an asterisk (*) following their U.S. Registration Numbers—if not all of the Vampire Family marks listed in this table—have become incontestable through their use.

3

| | | |
|---|---|---|
| VAMPIRE (cont.) | 3290011 | Glass- and beverage-ware |
| | 3669827* | Chocolate and coffee |
| | 3978444* | Restaurant and bar services |
| | 4776927 | Olive oil and balsamic vinegar |
| | 5444375 | Pre-mixed alcoholic beverages, other than beer based; pre-mixed alcoholic cocktails |
| | 6329522 | Hamburger sandwiches |
| VAMPIRE TACO | 4939034 | Tacos |
| VAMPYRE | 3082097* | Distilled spirits |

10.    The origin of Vampire wine, and Vampire Family Brand's claim of right, goes back to 1988, when its founder released a French-bottled Algerian Syrah under the brand name Vampire.  The first sale was to MCA Records and Alice Cooper, and the wine was promoted under the slogan, "Sip the Blood of the Vine." Vampire Family Brand's predecessors in interest began to use the slogan "Taste of Immortality" by at least 1995. Although the labels have changed over the years,

along with the sourcing from Algeria to Italy then to Transylvania and, finally, to Napa, the marketing has remained similarly playful.

11.    However, as the source of the wine shifted from Transylvania, Romania to Napa, California, the marketing evolved to emphasize that the quality of the wine was actually extremely good, with Vampire wine having won numerous gold medals throughout the years and scores of 90 Points and higher from various critics.

12.    Plaintiff, via its predecessors in interest, expanded its wine and spirits business into gourmet quality foods, including Vampire Fine Belgian Chocolate, Vampire Gourmet Coffee, Vampire Gourmet Olive Oil, and Vampire Gourmet Balsamic Vinegar.

13.    In 2011, Plaintiff's predecessor in interest opened a wine bar called the Vampire Lounge & Tasting Room in Beverly Hills, California.   Shortly thereafter, it obtained a trademark for VAMPIRE for restaurant and bar services. Several years later, it began to actively license its VAMPIRE TACO mark to a chain of more than 80 restaurants that make a fantastic tasting taco branded as Vampire Taco.

14.    In 2020, Plaintiff expanded its use of the VAMPIRE trademark for restaurants when it licensed its VAMPIRE mark to the New Orleans Vampire Café, which opened January 1, 2021.  The Vampire Café sells all of Plaintiff's VAMPIRE

branded wine varietals; all of Plaintiff's DRACULA branded wines, including its DRACULA pinot noir and DRACULA sparkling rose; Plaintiff's VAMPYRE vodka; Plaintiff's FANGRIA sangria; Plaintiff's VAMPIRE Coffee; and Plaintiff's VAMPIRE Chocolate. The Vampire Café also serves two styles of burgers, branded as the VAMPIRE Burger and the DRACULA Burger.

15.    When the Vampire Lounge opened in Beverly Hills in 2011, it was designed with the theme of a place where vampires with great wealth and taste would frequent, with a fun yet upscale atmosphere.  The Vampire Café in New Orleans is an offshoot of the Vampire Lounge and is decorated with a similar theme.  Throughout the venue there are both subtle and not so subtle signage regarding vampires.

16.    Plaintiff's VAMPIRE family of brands are available for the world to see on its website www.Vampire.com. They have received coverage in various national magazines and newspapers, including Maxim, InStyle, Elle, Shape, Star Magazine, the New York Times, the LA Times, the Houston Chronicle, the Star Tribune, the Chicago Sun Times, and many more.  *See* Exhibit B.  In addition, Plaintiffs' VAMPIRE family of brands have been shown on various national television shows, such as The View with Oprah Winfrey, Anderson Cooper (with Ashley Greene from Twilight fame), CNN Headline News, MTV's Viva La Bam, Food TV, and many more.  *See* Exhibit B.

17.    Plaintiff markets its brands through a national network of wholesalers and via www.Vampire.com.  VAMPIRE wines are sold nationally for anywhere between $10 to $16 per bottle at retail stores.  VAMPIRE wines also are available in bars and restaurants on wine lists.  DRACULA wines are sold for anywhere between $19.00 to $30.00 per bottle.

18.    VAMPIRE wine can be found nationally in chains of retail stores, including the Safeway supermarkets, Publix markets, Cost Plus World Market, the Yard House chain of restaurants, and elsewhere.

19.    Plaintiff and its associates have worked hard to ensure that they put the best wine in the bottle as possible.  Over the last few years, Plaintiff's Vampire family of wines have received great reviews and won gold medals in many competitions, including the San Francisco Chronical Wine Competition for its Vampire Merlot, Vampire Cabernet Sauvignon, and Vampire Pinot Noir; the Los Angeles Invitational Wine challenge for its Vampire Cabernet Sauvignon and Vampire Pinot Noir; the Access Live Wine & Spirits Tasting Competition for its Vampire Merlot; and the Texas International Rodeo Wine Competition.  Further, the Los Angeles International Wine & Spirits Competition gave Vampire Cabernet Sauvignon a rating of 92 points out of 100.  Plaintiff's highest-end wine, Trueblood Cabernet Sauvignon, has been rated 92 points and 97 points out of 100 by critics.

20.    Plaintiff has spent substantial amounts of time and money establishing, advertising, and promoting its Vampire family of brands. Plaintiff has established valuable goodwill through its brands' popularity, its advertising and sales, and its websites (including www.Vampire.com). This goodwill is embodied by Plaintiff's Vampire Family marks.

**B. Defendants' Unauthorized Use of Plaintiff's Vampire Family Marks**

21.    Defendants operate a wine bar and bistro restaurant called "Dracula's Legacy," located at 111 2nd Avenue NE, St. Petersburg, Florida 33701, that infringes upon Plaintiff's Vampire Family marks.

22.    Defendants' wine bar features a collection of wines that, both individually and collectively, infringe on Plaintiff's Vampire Family marks. For example, Defendants prominently offer their wine brand, which is also named "Dracula's Legacy." Defendants sell six different types of Dracula's Legacy wine, including: Dracula's Legacy Rose; Dracula's Legacy Feteasca Neagra; Dracula's Legacy Regala; Dracula's Legacy Sauvignon Blanc; and Dracula's Legacy Cabernet Sauvignon.

23.    Defendants also sell an infringing wine called Dark Count, a red blend with an obvious visual reference to Dracula on the front label. If one doesn't see that immediately, the back-label specifically says, "The Dark Count of

Transylvania embodies the legend of Dracula, the famous centuries-old vampire. Is he a creature of darkness or a nobleman condemned to eternal damnation?"

24.     Defendants showcase another infringing wine, this one named, "Draculea."  The Dracula's Legacy wines, the Dark Count, and Draculea are herein collectively referred to as the "accused products" or, simply, "Dracula's Legacy wines."

25.     Defendants use the word "vampire" throughout their wine bar, both inside and outside.   For example, on top of the awning outside the wine bar, it says "VAMPIRE[AVN]," a few inches away from a sign that says DRACULA'S LEGACY.   Exhibit A.

26.     To the left of the entrance is the menu, and bigger and bolder than any item on the menu is a sign that says, "Warning!, Property Protected by VAMPIRES."  Exhibit A.

27.     Inside the wine bar there's a sign that prominently says, BEWARE OF VAMPIRES, and the wine bar is decked out with vampire memorabilia, including a standing wooden vampire shaped coffin approximately four feet high, and pictures of Dracula from vampire movies.

28.     On January 8, 2022, Defendants filed a trademark application that was assigned serial number 97209384 for the mark DRACULA'S LEGACY in

international classes 33 (for wine) and 43 (for bar services featuring wine and bistro). As of the date of this filing, that application is still under review.

29.    Defendants' intentional and wrongful infringing acts are harming Plaintiff's brands' reputation, are diluting the Vampire Family brands, and are disparaging.

30.    If Defendants are not stopped from marketing their wine bar and bistro by using Plaintiff's Vampire Family marks, including both the DRACULA mark and the VAMPIRE mark—or marks confusingly similar to them—then consumers will likely be confused about the source and origin of Defendants' products and services and mistakenly conclude that Defendants' products or services are associated with Plaintiff and/or its licensees.

31.    Alternatively, if Defendants are not stopped from using Plaintiff's DRACULA and VAMPIRE marks—or marks confusingly similar to them—then consumers will likely be confused about the source of Plaintiff's or its licensees' products and services and mistakenly conclude that Plaintiff's or its licensees' products or services are associated with Defendants.

## COUNT I
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125(a)

32.    Plaintiff realleges the allegations in paragraphs 1 through 31.

33.    "Dracula," the dominant portion of Defendants' mark for both their wine bar and their wines—Dracula's Legacy—is identical to Plaintiff's trademark DRACULA.  Because the dominant portions of the marks are identical, the marks are likely to engender the same connotation and overall commercial impression when considered in connection with Defendants' goods and services and with Plaintiff's wines, spirits, burgers, restaurant services, and other goods.

34.    Similarly, because the character Dracula is a vampire, Defendants' use of "Dracula" engenders the same connotation and overall commercial impression when considered in connection with Defendants' goods and services and with Plaintiff's goods and services bearing its VAMPIRE trademark.

35.    The goods and services for which Defendants unlawfully use their mark "Dracula's Legacy" are identical to the goods and services for which Plaintiff uses its DRACULA and VAMPIRE marks, giving rise to the mistaken belief that the goods and services of the parties have the same source.

36.    The likelihood of confusion is even greater given that it is common for the same marks to be used for both wines and restaurants.  The Defendants' use of the Dracula's Legacy mark is likely to confuse consumers and make them believe that Plaintiff's DRACULA and VAMPIRE wines, and/or Plaintiff's and its' licensees' other goods and services, are associated with Defendants' wine bar and wines.  *See* In re Opus One Inc., 60 USPQ2d 1812 (TTAB 2001) (holding that the

use of OPUS ONE for both wine and restaurant services was likely to cause confusion, where the evidence indicated that OPUS ONE is a strong and arbitrary mark, that it is common in the industry for restaurants to offer and sell private label wines named after the restaurant, and that registrant's wines were served at applicant's restaurant).

37.    Furthermore, the channels of trade and class(es) of purchasers are the same for both Plaintiff's and Defendants' goods and services, further resulting in a likelihood of confusion.

38.    Defendants' use of the words Dracula and Vampire so closely resembles Plaintiff's products and services (including Plaintiff's restaurant services) that the public is likely to be confused and deceived, and to assume erroneously that Defendants' infringing wines are produced by Plaintiff or under Plaintiff's direction; that Defendants' wine bar is part of Plaintiff's family of brands; or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

39.    Alternatively, Defendants' marketing and advertising efforts are likely to mislead consumers to believe that Plaintiff's goods and services may be the unauthorized use of Defendants' trademarks.  If Defendants continue their wrongful acts, consumers are likely to be misled to believe that Plaintiff is misusing the DRACULA and VAMPIRE marks.

12

40.     Further, the décor and thematic elements (i.e., trade dress) found at Defendants' wine bar, such as its frequent and prominent use of vampire signs and references to Dracula, further infringe upon Plaintiff's Vampire Family marks.

41.     Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff, nor has Plaintiff approved or authorized any of the goods or services offered or sold by Defendants.

42.     Plaintiff has no control over the nature and quality of the goods and services offered and sold by Defendants and its licensees.  Any failure, neglect, or default by Defendants or its licensees in providing such products or services will reflect adversely on Plaintiff as being the believed source of said failure, neglect, or default, thereby hampering Plaintiff's continuing efforts to protect its outstanding reputation and further build that reputation. Said failure, neglect, or default will irreparably harm Plaintiff by causing loss of revenue to Plaintiff and loss of value of Plaintiff's considerable expenditures to promote its goods and services under the DRACULA and VAMPIRE marks.

43.     Without the knowledge or consent of Plaintiff, Defendants have marketed and sold in interstate commerce, and in commerce substantially affecting interstate commerce, products and services branded under the name DRACULA and continue to do so. Defendants have promoted, publicized, advertised, offered for sale, and sold products and services using the DRACULA

13

and VAMPIRE marks—or marks confusingly similar to them—through persons not authorized by, employed by, or associated in any way with Plaintiff, and they have used the DRACULA trade name and trademark as a false designation and false representation for wine products and restaurant services.

44.    None of Defendants' activities described in this Complaint have been authorized by Plaintiff. Defendants' unauthorized use of Plaintiff's trademarks and trade names in interstate commerce, or commerce substantially affecting interstate commerce, constitutes infringement and an inducement to infringe Plaintiff's trademarks and/or trade names.  Such activities are likely to cause confusion, mistake, and to deceive the public at large.

45.    Upon information and belief, Defendants have acted with the unlawful purpose of:

    a.  Improperly taking advantage of the valuable goodwill belonging to Plaintiff;

    b.  Soliciting Plaintiff's customers and potential customers, and attempting to sell and selling to such customers goods and services marketed under the DRACULA and VAMPIRE marks through persons not authorized by, employed by, or associated in any way with Plaintiff;

    c.  Inducing others to infringe Plaintiff's trademarks and trade names; and

    d.  Causing the goods of persons not authorized by, employed by, or associated in any way with Plaintiff to be falsely represented as if they were rendered, authorized by, sponsored by, endorsed by, or otherwise connected with Plaintiff and its licensed trademarks and trade names.

46.    Defendants' conduct, as alleged in this complaint, constitutes a violation of 15 U.S.C. § 1125(a).

47.    If Defendants are allowed to continue marketing and selling the accused goods and services, Plaintiff will be damaged as alleged in this complaint and the Defendants will profit thereby.  Furthermore, unless the Court permanently enjoins Defendants' infringing conduct, Plaintiff's business, goodwill, and reputation will suffer irreparable injury of an insidious and continuing sort that cannot be adequately calculated and compensated in monetary damages.

48.    This high-jacking of Plaintiff's DRACULA and VAMPIRE trademarks improved the marketability of Defendants' wine bar, as the use of the words "vampire" and "Dracula" make Defendants' wine bar more interesting.  It led to

more people hearing about Defendants' wine bar, leading them to come in and try the wines and buy food, thus lowering Defendants' costs to advertise.

49.    Defendants are acting willfully and with an intent to use or abuse the goodwill Plaintiff has worked hard to develop.  Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

50.    The intentional nature of Defendant's acts makes this an exceptional case under 15 U.S.C. §1117(a).

## COUNT II
## VIOLATION OF LANHAM ACT 15 U.S.C. §1114

51.    Plaintiff repeats each allegation contained in paragraphs 1 through 50 as though set forth herein at length.

52.    Defendants have engaged in, and continue to engage in, the wrongful exploitation of Plaintiff's Vampire Family marks.

53.    Defendants' goods are so closely related to Plaintiff's goods that the public is likely to be confused, be deceived, and erroneously assume that Defendants' Dracula's Legacy branded goods and services, as packaged, advertised, promoted, and sold, are Plaintiff's, or that Defendants are in some way connected with, sponsored by, or affiliated with Plaintiff—all to Plaintiff's detriment and irreparable damage.

16

54.     Defendants are not affiliated with, connected with, endorsed by, or sponsored by Plaintiff.  Furthermore, Plaintiff has not approved any of the goods or services offered or sold by Defendants.

55.     Defendants have acted willfully and with an intent to ride on, step on, or demolish the goodwill Plaintiff has worked hard to develop.  Defendants' aforesaid infringing conduct has been willful and with knowledge that the sale, marketing, advertisement, and promotion of their accused products and restaurant services will hinder the future commercial success of Plaintiff's Vampire family of brands, including its further foray into the food, cocktail, and restaurant space.  Plaintiff is therefore entitled to treble damages arising therefrom, as well as reimbursement of Plaintiff's attorneys' fees and costs.

## COUNT III
## VIOLATION OF LANHAM ACT 15 U.S.C. §1125c

56.     Plaintiff repeats each allegation contained in paragraphs 1 through 55 as though set forth herein at length.

57.     Plaintiff's Vampire family of brands have appeared on The View, Anderson Cooper, CNN Headline News, Entertainment Tonight, MTV's Viva La Bam, The Food Channel, and A & E.  They have been written up in widely circulated magazines such as Star Magazine, Shape, Maxim, InStyle, Elle, Spin, Rolling Stone, Marie Claire, Cosmo Girl, and The Wine Enthusiast; as well as in

regional newspapers such as the LA Times, the NY Times, and the Houston Chronicle. *See* Exhibit B. As such, Plaintff's brands have developed a fame all of their own, catapulting the Vampire brand into the category of a famous mark.

58.    Plaintiff's associates and predecessors in interest periodically work with Hollywood film companies and engage in mutually beneficial promotions. For example, Plaintiff's products can be found in the *Blade* films (starring Wesley Snipes) and HBO's *Trueblood* series. Plaintiff has done promotions connecting its Vampire family of brands to films such as the Underworld series (starring Kate Beckinsale) and *Blade Trinity*. Plaintiff's wines also have been featured and poured at film premiers for *Dusk Til' Dawn* (written by Quentin Tarantino) and *Dark Shadows* (starring Johnny Depp). A small sampling of the press talking about Plaintiff's Vampire family of brands is contained in Exhibit B.

59.    Plaintiff fears that Defendants' use of the word Dracula as a mark for goods and services will ultimately cause consumers to believe that Plaintiff's branded wines and restaurants are not of the high quality that they are and will tarnish, dilute, and otherwise damage the reputation of Plaintiff's goods and services. This will lead to irreparable harm to Plaintiff's goodwill, reputation, and sales.

60.    Plaintiff also fears that the disparagingly lower quality of a few of Defendants' accused products will interfere with Plaintiff's ability to attract high-profile Hollywood film premiers for joint promotions in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. That the Court adjudge and decree that Defendants have falsely designated the origin of certain goods and services as those of Plaintiff, have made and used false representations in connection with the sale, offering for sale, promotion, and advertising of such goods and services, and have unfairly competed with Plaintiff at common law.

B. That the Court adjudge and decree that Defendants have infringed Plaintiff's registered DRACULA and VAMPIRE trademarks.

C. That the Court adjudge and decree that Defendants unlawfully diluted and diminished Plaintiff's rights in its Vampire Family marks.

D. That the Court adjudge and decree that Defendants unlawfully induced others to infringe upon Plaintiff's trademarks.

E. That the Court permanently enjoin Defendants, its agents, servants, employees, attorneys, and all persons acting in concert or participation with them or any of them from:

a. Using DRACULA, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or words, (including Vampire), trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and promotion of beverage products and beverage accessories;

b. Using VAMPIRE, or any other word or words which are similar to, or a colorable imitation of, Plaintiff's trade names and marks, either alone, as part of, or together with, any other word or words, (including Dracula), trademark, service mark, trade name, or other business or commercial designation in connection with the sale, offering for sale, advertising, and promotion of beverage products and beverage accessories;

c. Selling, offering to sell, marketing, distributing, advertising, and promoting any food or beverage product, good, or service with the word DRACULA or VAMPIRE displayed on any product, packaging, advertising, or promotional materials;

d. Representing directly or indirectly by words or conduct that any food or beverage product, good, or service offered for sale, sold,

promoted, or advertised by Defendant is authorized, sponsored by, endorsed by, or otherwise connected with Plaintiff;

e. Aiding or abetting in unfair competition against Plaintiff;

f. Aiding or abetting in false advertising; and

g. Inducing others to engage in any of these aforementioned acts.

F. That the Court award an amount to be determined at trial, but at least an amount equivalent to treble the amount of Defendants' illicit profits *(including profits made by Defendants from all wine and food sales since they used Plaintiff's mark to bring customers in to buy other wines and food)*, or Plaintiff's lost profits, whichever is greater.

G. That the Court award an amount to be determined at trial but at least an amount equal to the cost of prospective corrective advertising.

H. That the Court award judgment against Defendants for the full costs of this action, including the attorney's fees reasonably incurred by Plaintiff.

I. That the Court order such other further and different relief as the nature of this action may require and as the Court may deem just and proper.

J. That the Court retain jurisdiction of this action for the purpose of enabling Plaintiff, in its discretion, to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for

the modification of any such order, for the enforcement of compliance therewith, and/or for the punishment of any violation thereof.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all triable issues raised by the Complaint.

DATED this 8th day of May, 2023.

Respectfully submitted by:

/s/ Sarah Bryant
Sarah Bryant
Florida Bar No. 1021987
2654 10th St N
St. Petersburg, FL 33704
Telephone: (727) 310-9386
E-mail: sebryantlaw@gmail.com
*Counsel for Plaintiff*

Michael Machat, Esq.
California Bar No. 109475
*Motion for Special Admission Forthcoming*
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com
*Counsel for Plaintiff*