IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

_____

**VAMPIRE FAMILY BRANDS, LLC**

        Plaintiff,

                              Case No. 8:23-cv-01014-TPB-TGW

v.

**SC VIILE BUDUREASCA SRL, AMAVI
VINUM, LLC, DRACULA'S LEGACY, LLC,
ELENA RAMONA NEAMTU,
VASILE RELU NEAMTU, and
ROBERT IONUT NEAMTU**

        Defendants.
_____/

## AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO AMENDED COMPLAINT

Defendants, Dracula's Legacy, LLC ("Dracula's Legacy"), Elena Ramona Neamtu ("Ramona"), Vasile Relu Neamtu ("Vasile"), and Robert Ionut Neamtu ("Robert) (hereinafter collectively referred to as the "Dracula Defendants") Answer the allegations in the Amended Complaint filed on July 25, 2023. Defendants deny each and every allegation of the Amended Complaint not specifically admitted or denied in this Answer.

### JURISIDCTION AND VENUE

1. Admitted Plaintiff brought this action; otherwise denied.

2. Admitted.

3. Admitted.

### JURISIDCTION AND VENUE

1

4. Without knowledge, therefore denied.

5. Without knowledge, therefore denied.

6. Without knowledge, therefore denied.

7. Admitted.

8. Admitted.

9. Admitted.

10. Denied.

11. Admitted Plaintiff refers to Dracula's Legacy, Elena Ramona Neamtu, Vasile Relu Neamtu, and Robert Ionut Neamtu in its Amended Complaint as the "Florida Defendants."

12. Denied.

## FACTS

### A. Plaintiff's Vampire Family Trademarks[1]

13. Without knowledge, therefore denied.

14. Without knowledge, therefore denied.

15. Without knowledge, therefore denied.

16. Without knowledge, therefore denied.

17. Without knowledge, therefore denied.

18. Without knowledge, therefore denied.

19. Without knowledge, therefore denied.

20. Without knowledge, therefore denied.

---

[1] To the extent the headings contain any allegations, Defendants deny them.

21. Without knowledge, therefore denied.

22. Without knowledge, therefore denied.

23. Without knowledge, therefore denied.

24. Without knowledge, therefore denied.

**B. Defendants' Unauthorized Use of Plaintiff's Vampire Family Marks**

25. Without knowledge, therefore denied.

26. Without knowledge, therefore denied.

27. Without knowledge, therefore denied.

28. Without knowledge, therefore denied.

29. Without knowledge, therefore denied.

30. Without knowledge, therefore denied.

31. Without knowledge, therefore denied.

32. Without knowledge, therefore denied.

33. Without knowledge, therefore denied.

34. Without knowledge, therefore denied.

35. Without knowledge, therefore denied.

36. Admitted that Dracula Legacy's LLC operates a wine and bar bistro restaurant called Dracula's Legacy located at 111 2nd Avenue NE, St. Petersburg, Florida 33701, otherwise denied.

37. Denied.

38. Denied.

39. Denied.

40. Admitted Exhibit A speaks for itself, otherwise denied.

41. Admitted Exhibit A speaks for itself, otherwise denied.

42. Admitted the Dracula Defendants' bar has vampire memorabilia.

43. Without knowledge, therefore denied.

44. Denied.

45. Admitted on January 8, 2022 Serial Number 97/209,384 was filed, and admitted that the '384 application speaks for itself; otherwise denied.

46. Admitted Mrs. Neamtu spoke with Mr. Michael Machat, otherwise denied.

47. Admitted Exhibit C speaks for itself, otherwise denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

### COUNT I – VIOLATION OF LANHAM ACT §1125(a)
### (AS TO ALL DEFENDANTS)

53. Defendants restate their responses from paragraphs 1 through 52 above.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

4

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied (including denying all subparts).

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

### COUNT II – VIOLATION OF LANHAM ACT 15 U.S.C. §1114
### (AS TO ALL DEFENDANTS)

73. Defendants restate their responses from paragraphs 1 through 72 above. Defendants specifically object to plaintiff's shotgun pleading.

74. Denied.

75. Denied.

76. Admitted Dracula Defendant are not affiliated with Plaintiff, otherwise denied.

77. Denied.

### COUNT III – CANCELLATION OF TRADEMARK REGISTRATION NUMBER 6584126 UNDER U.S.C. §1119 (AS TO BUDUREASCA ONLY)

78. Count III is not alleged against Dracula Defendants.

79. Count III is not alleged against Dracula Defendants.

80. Count III is not alleged against Dracula Defendants.

81. Count III is not alleged against Dracula Defendants.

82. Count III is not alleged against Dracula Defendants.

83. Count III is not alleged against Dracula Defendants.

84. Count III is not alleged against Dracula Defendants.

85. Count III is not alleged against Dracula Defendants.

### COUNT IV – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"), § 501.201 *ET. SEQ.* FLA. STAT. (AS TO FLORIDA DEFENDANTS ONLY)

86. Defendants restate their responses from paragraphs 1 through 85 above. Defendants specifically object to plaintiff's shotgun pleading.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

93. Denied.

### COUNT V – COMMON LAW TRADEMARK INFRINGEMENT AND PASSING OFF (AS TO FLORIDA DEFENDANTS ONLY)

94. Defendants restate their responses from paragraphs 1 through 93 above. Defendants specifically object to plaintiff's shotgun pleading.

95. Without knowledge, therefore denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Without knowledge, therefore denied.

### COUNT VI – DILUTION PURSUANT TO FLA. STAT § 495.151 (AS TO FLORIDA DEFENDANTS ONLY)

101. Defendants restate their responses from paragraphs 1 through 100 above. Defendants specifically object to plaintiff's shotgun pleading.

102. Without knowledge, therefore denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state any claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Dracula Defendants have not infringed any valid, enforceable trademark owned by Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff comes before the Court with unclean hands as it and/or its predecessors in interests engaged in fraudulent conduct before the USPTO by misleading the USPTO in an effort to obtain trademark registrations on the terms Dracula and Vampire.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff comes before the Court with unclean hands as it and/or its predecessors in interests engaged in fraudulent conduct before the USPTO by submitting fraudulent statements, attested under oath, in an effort to obtain trademark registrations. Plaintiff and/or its predecessors in interest attestations were and remain false thereby rendering the registration invalid and/or unenforceable.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff, and/or its predecessors in interest, have abandoned its rights in the marks and registrations through a failure to use in interstate commerce.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate their damages, if any, alleged suffered from Defendant's alleged conduct.

### COUNTERCLAIMS

Defendant/Counter-Plaintiff, Dracula's Legacy, LLC ("Dracula's Legacy"), asserts counterclaims against Plaintiff/Counter-Defendant, Vampire Family Brands, LLC ("VFB"), as follows:

## THE PARTIES

1. Dracula's Legacy is a Florida limited liability company with its principal place of business in Pinellas County, Florida.

2. Upon information and belief according to allegations in Counter-Defendant's Amended Complaint in this action, VFB is a limited liability company organized and existing under the laws of Delaware, with its principal place of business located in Los Angeles County, California.

## JURISDICTION AND VENUE

3. This is an action for cancellation of U.S. Registration No. 3,319,536 (the '536 Registration) for the mark "Dracula" and U.S. Registration No. 3,978,444 (the '444 Registration) for the mark "Vampire."

4. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as 15 U.S.C. §§ 1119 and 1121, because the Dracula's Legacy's claims arise under federal law and the U.S. laws concerning trademarks, and because the claims arise directly out of the causes of action filed by Counter-Defendants in the Amended Complaint in this action.

5. This Court has personal jurisdiction over VFB by virtue of, *inter alia*, VFB's filing of its Amended Complaint against Dracula's Legacy in Florida.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and because Counter-Defendants have consented to venue in this district by filing this action, which is currently pending in this district.

## GENERAL ALLEGATIONS

A.  **VFB's Registration of the Challenged Marks**

7. The term "VAMPIRE" dates back to the history of a Romanian hero named "Vlad the Impaler" or "Vlad Dracula" who became famous for the brutal way in which he punished his enemies. He became a national hero to the people of Romania. As such, many people, and in particular natives of Romania, associate "Dracula" with "Vlad the Impaler." Over time, people all over the world have learned of "Count Dracula"—the undead embodiment of Dracula—and commonly associate Dracula with vampires as a whole.

8. Dracula's Legacy is a small local business in St. Petersburg, Florida. Its owners are a Romanian family that immigrated to the United States to pursue a better life. In order to make a living, Dracula's Legacy opened a wine bar called "Dracula's Legacy" to pay homage to their Romanian heritage, and in particular, the legacy of the Romanian hero Vlad the Impaler/Dracula. To follow the theme of "Dracula" and vampires that originated in Transylvania, Romania, Dracula's Legacy stylized its wine bar with vampire aesthetics with various references to "Vlad the Impaler" and "Dracula." Over time, Dracula's Legacy has built a successful small business that attracts many patrons from all over who are intrigued by the bar's unique theme and the homage paid to the legacy of Vlad the Impaler/Dracula.

9. VFB and its managing officer have no ties or relation to Romania and therefore cannot appreciate the cultural significance of the character "Dracula" to Romanians. VFB seeks to obtain a monopoly over a historical character, and entire

class of fictional characters (e.g., vampires), that it did not develop or create. Indeed, on information and belief, the consuming public does not associate vampires or Dracula with VFB, but instead associates them with Vlad the Impaler and Count Dracula.

10. On information and belief, numerous third parties use Dracula or vampires to convey imagery and association with Dracula, vampires, goth culture, and Halloween.

11. On information and belief, the relevant consuming public does not associate Dracula or vampires with any single brand of restaurant or brand of wine. On information and believe, neither Dracula nor vampire serves a source identifying function concerning restaurant and bar services, restaurant and hotel services, restaurants, or wine.

12. During prosecution of the trademark application for the mark VAMPIRE in connection with the following goods/services: "Restaurant; Restaurant and bar services; Restaurant and hotel services," VFB (or its predecessor in interest) submitted the following sworn statement (the "Vampire Sworn Statement"):

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to

11

> the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

13. On information and belief, at the time the Vampire Sworn Statement above was submitted, VFB knew or should have known that the statement was not true.

14. In reliance on Vampire Sworn Statement, the USPTO permitted the '444 Registration to issue.

15. On information and belief, VFB has also abandoned any usage of the '444 Registration.

16. During prosecution of the trademark application for the mark DRACULA in connection with the following goods/services: "Wine" VFB (or its predecessor in interest) submitted the following sworn statement (the "Dracula Sworn Statement"):

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in

12

commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.

17. On information and belief, at the time the Dracula Sworn Statement above was submitted, VFB knew or should have known that the statement was not true.

18. In reliance on Dracula Sworn Statement, the USPTO permitted the '536 Registration to issue.

## COUNT II – CANCELLATION OF U.S. REGISTRATION NO 3,319,536 FOR THE MARK "DRACULA" PURSUANT TO 15 USC § 1064 AND §1119

19. Counter-Plaintiffs re-allege and re-aver paragraphs 1-18 as through fully set forth herein.

20. VFB submitted the Dracula Sworn Statement, which was false at the time it was submitted to the USPTO, in an effort to obtain the '536 Registration.

21. The USPTO relied on VFB's false statements in issuing the '536 Registration.

22. On information and belief, VFB's false statements were made with the intent to deceive the USPTO to rely on, and accept the application that matured into the '536 Registration.

23. VFB and/or its predecessors in interest knew the Dracula Sworn Statement was false when it was made and despite such knowledge willfully submitted such statement knowing that they were punishable by fine or

imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statement would jeopardize the validity of the '536 Registration.

24. But for VFB's willful false statements the '536 Registration would not have issued.

25. Counter-plaintiff has been damaged by the issuance of the '536 Registration, because, inter alia, it is now forced to defend itself from allegations of infringement against a registration which would have never issued but for Counter-defendant's false statements to the USPTO.

26. The '536 Registration should be cancelled pursuant to U.S.C. §§ 1064 and 1119 on the grounds that the registration was obtained as a consequence of fraud practiced upon the USPTO by Counter-defendant in that, at the time Counter-defendant submitted the Vampire Sworn Statement, Counter-defendant falsely misrepresented to the USPTO with the intent to deceive the USPTO that VFB was entitled to the '536 Registration, when in fact it was not. Further, Counter-plaintiff should be awarded damages sustained as a result of Counter-defendant's false statements to the USPTO.

### COUNT II – CANCELLATION OF U.S. REGISTRATION NO 3,978,444 FOR THE MARK "VAMPIRE" PURSUANT TO 15 USC § 1064 AND §1119

27. Counter-Plaintiffs re-allege and re-aver paragraphs 1-18 as through fully set forth herein.

28. VFB submitted the Vampire Sworn Statement, which was false at the time it was submitted to the USPTO, in an effort to obtain the '444 Registration.

14

29. The USPTO relied on VFB's false statements in issuing the '444 Registration.

30. On information and belief, VFB's false statements were made with the intent to deceive the USPTO to rely on, and accept the application that matured into the '444 Registration.

31. VFB and/or its predecessors in interest knew the Vampire Sworn Statement was false when it was made and despite such knowledge willfully submitted such statement knowing that they were punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statement would jeopardize the validity of the '444 Registration.

32. But for VFB's willful false statements the '444 Registration would not have issued.

33. To the extent VFB ever used the mark identified in the '444 Registration, VFB has abandoned any such usage.

34. Counter-plaintiff has been damaged by the issuance of the '444 Registration, because, inter alia, it is now forced to defend itself from allegations of infringement against a registration which would have never issued but for Counter-defendant's false statements to the USPTO.

35. The '444 Registration should be cancelled pursuant to U.S.C. §§ 1064 and 1119 on the grounds that the registration was obtained as a consequence of fraud practiced upon the USPTO by Counter-defendant in that, at the time Counter-defendant submitted the Vampire Sworn Statement, Counter-defendant falsely misrepresented to the USPTO with the intent to deceive the USPTO that

15

VFB was entitled to the '444 Registration, when in fact it was not. Further, Counter-plaintiff should be awarded damages sustained as a result of Counter-defendant's false statements to the USPTO.

## PRAYER FOR RELIEF

WHEREFORE, Defendants/Counter-Plaintiffs, Dracula's Legacy, LLC, request the following relief:

1. For the Court to enter an Order canceling the '536 Registration in its entirety from the records of the USPTO pursuant to 15 USC §§ 1064 and 1119;

2. For the Court to enter an Order canceling the '444 Registration in its entirety from the records of the USPTO pursuant to 15 USC §§ 1064 and 1119;

3. For the Court to enter judgment that Dracula's Legacy has not infringed any valid, enforceable rights of Plaintiff/Counterclaim-defendant;

4. An award to Dracula's Legacy of its attorneys' fees and costs; and

5. For such other and further relief the Court deems just and proper.

October 19, 2023              /s/ Woodrow H. Pollack
                              Woodrow H. Pollack
                              Lead counsel
                              Florida Bar No. 26802
                              Brian Paul
                              Florida Bar No. 1018684
                              **SHUTTS & BOWEN, LLP**
                              4301 W Boy Scout Blvd
                              Suite 300
                              Tampa, FL 33607
                              (813) 463-4894
                              wpollack@shutts.com
                              bpaul@shutts.com

                              *Counsel for Dracula Defendants*

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on <u>October 19, 2023</u> a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.

                                              */s/ Woodrow H. Pollack*
                                              Woodrow H. Pollack