UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| VAMPIRE FAMILY BRANDS, LLC, <br>     Plaintiff, <br> v. <br> DRACULA'S LEGACY, LLC, <br> ELENA RAMONA NEAMTU, and <br> VASILE RELU NEAMTU <br>     Defendants. | Case No. 8:23-cv-1014-TPB-TGW |
| DRACULA'S LEGACY, LLC, <br><br>     Counterclaimant <br> v. <br> VAMPIRE FAMILY BRANDS, LLC, <br>     Counter-defendant | |

**TIME SENSITIVE MOTION BY VAMPIRE FAMILY BRANDS TO DISMISS WITHOUT PREJUDICE, PURSUANT TO FED.R. CIV. P. 41(a)(2)**

**A. Relevant Factual Background**

On September 30, 2025, in its ruling on Plaintiff's Motion for Partial Summary Judgment, this Court dismissed Defendants' first counterclaim, in its entirety, for alleged fraudulent procurement by Plaintiff of its DRACULA trademark Registration No. 3,319,536 for wine and dismissed the portion of Defendants' second counterclaim regarding an allegation of fraudulent procurement by Plaintiff of its VAMPIRE trademark Registration No. 3,978,444 for bar and restaurant services ("the '444 Registration"). The

1

Court left intact the portion of the second counterclaim claiming abandonment of the VAMPIRE mark for bar and restaurant services.

Given that Plaintiff has already successfully stopped Defendant from selling infringing DRACULA LEGACY wine through its settlements with the dismissed defendants, and given the impending costs associated with trial, subsequently on October 8, 2025, Plaintiff reached out to Defendants and once more repeated its prior settlement[1] demand of $2,000 with the agreement (1) by Defendants not to use the DRACULA mark on wine or alcoholic beverages, and (2) by Plaintiff not to oppose Defendants' current trademark application for bars and restaurants. This resolution would permit Defendants to keep operating their wine bars as they are. Defendants declined the offer to settle.

As a result, on October 27, 2025, Plaintiff issued a covenant not to sue (with respect to "the '444 Registration"), copying the relevant language in *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 726–27, 184 L. Ed. 2d 553 (2013). The covenant not to sue moots the remaining portion of Defendants' second counterclaim for abandonment of the '444 Registration for the VAMPIRE mark for bar and restaurant services and thereby removes the counterclaim from this Court's subject matter jurisdiction.

The covenant not to sue does not resolve the issue of whether Defendants infringed Plaintiff's various other trademark rights, including its federal registration for DRACULA for wine, by selling a wine named Dracula's Legacy . However, because (1) Plaintiff

---

[1] This same settlement demand was made over a year ago on October 8, 2024, and rejected October 13, 2024. Plaintiff then filed its motion for partial summary judgment, expending numerous billable hours in the process of preparing the motion.

2

successfully cut off the source of Defendants' infringing wine by entering into settlement agreements with both the Romanian winery that produced the wine and the US importer that imported the wine, and (2) Defendants stopped selling the accused wine over a year ago, and (3) Plaintiff recently defeated the Defendants fraud counterclaims, in an effort to avoid the additional expense of trial related to the Defendants limited wine sales, Plaintiff provided a covenant not to sue on the '444 registration to moot the remaining abandonment portion of Defendant's second counterclaim and made a third offer to settle based on a mutual walk-a-way with each party to bear their own costs and expenses. Plaintiff understands that offer will be rejected once again,[2] forcing Plaintiff to bring this motion to dismiss the remaining portion of the Defendants' second counterclaim for lack of subject matter jurisdiction.  Plaintiff also brings this motion to dismiss its claims without prejudice pursuant to Fed. R. Civ. P. 41(a)(2) at the same time.

### B. The Covenant Not to Sue Renders Defendant's Remaining Counterclaim Moot.

A case becomes moot—and therefore no longer a "Case" or "Controversy" for purposes of Article III—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (*per curiam* ) (some internal quotation marks omitted). No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute "is no longer embedded in any actual

---

[2] During the meet and confer on this motion, Defendants' attorney explained it was unlikely to be accepted. Due to time sensitive nature of this motion, Plaintiff is filing this motion now. If Defendants accept the parties will promptly inform the Court.

controversy about the plaintiffs' particular legal rights." *Alvarez, supra,* at 93, 130 S.Ct. 576, *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91, 133 S. Ct. 721, 726–27, 184 L. Ed. 2d 553 (2013). In *Nike*, the Supreme Court summed up this concept and wrote,

> Article III of the Constitution grants the Judicial Branch authority to adjudicate "Cases" and "Controversies." In our system of government, courts have "no business" deciding legal disputes or expounding on law in the absence of such a case or controversy. *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 341, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). That limitation requires those who invoke the power of a federal court to demonstrate standing—a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). We have repeatedly held that an "actual controversy" must exist not only "at the time the complaint is filed," but through "all stages" of the litigation. *Alvarez v. Smith,* 558 U.S. 87, 92, 130 S.Ct. 576, 175 L.Ed.2d 447 (2009) (internal quotation marks omitted); *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed' " (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)))

*Already, LLC v. Nike, Inc.,* 568 U.S. 85, 90–91, 133 S. Ct. 721, 726, 184 L. Ed. 2d 553 (2013)

Here, as was the case in *Nike,* Plaintiff has given Defendants a covenant not to sue that is unconditional and irrevocable.[3] This covenant not to sue on its VAMPIRE trademark Registration No. 3,978,444 moots Defendants' remaining counterclaim for abandonment. So now that Plaintiff is precluded from pursuing any claim against Defendants based on the '444 Registration, the question of whether

---

[3] A copy of the covenant is attached as Exhibit A.

4

Plaintiff abandoned the '444 Registration is moot, as was the case in *Nike,* freeing up any impediment to Plaintiff filing this motion to dismiss without prejudice.

### C. Plaintiff's motion to dismiss without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2) should be granted without conditions.

FRCP 41(a)(2) provides, "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

"A district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2), Fed.R.Civ.P. *Pontenberg v. Boston Scientific Corp.,* 252 F.3d 1253, 1255 (11th Cir.2001) (per curiam). Generally speaking, a motion for voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice other than the mere prospect of a second lawsuit. *Id.; Fisher,* 940 F.2d at 1502–03 (citing *Durham v. Fla. E. Coast Ry. Co.,* 385 F.2d 366, 368 (5th Cir.1967))." *Arias v. Cameron,* 776 F.3d 1262, 1268 (11th Cir. 2015).

In most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, other than the mere prospect of a subsequent lawsuit, as a result." *Pontenberg v. Boston Science Corp.,* 252 F.3d 1253 (11th Cir.2001). Furthermore, [i]t is no bar to a voluntary dismissal that the plaintiff may obtain some tactical advantage over the defendant in future litigation. Dismissal may be inappropriate, however, if it would cause the defendant to lose a substantial right. *Id.* (internal citations and quotation marks omitted).

### 1. Defendants will suffer no harm if the motion to dismiss without prejudice is granted.

Defendants will suffer no harm if Plaintiff's request for dismissal without prejudice is granted. Since there is now a covenant not to sue in place, Defendants have no need to worry about a second lawsuit based upon Plaintiff's '444 Registration for bar and restaurant services, unless they were to infringe Plaintiff's trademarks for wines and spirits. Given that their prior source for the accused wine has been shut off, it is unlikely they will be able to infringe. And if they do so, it would be at their discretion. The facts are clear in this case, that once the lawsuit was served upon Defendants, they voluntarily chose to stop selling the accused wine. The likelihood of confusion factors that would be considered if this case were to go to trial overwhelmingly favor Plaintiff.

If the Court would permit, Plaintiff would gladly file another motion for summary judgment on trademark infringement concerning Defendants use of its Dracula's Legacy trademark on wine. Nevertheless, at this stage, Plaintiff is requesting permission to dismiss and walk away from a sure win on this matter of trademark infringement of its wine due to practicality. Defendants stopped selling the infringing wine and the source has been cut-off. According to the Romanian winery, the total bottles of infringing wine was just 2,880 bottles by the winery (Defendants claim selling less than 300 bottles)[4]. Plaintiff sees no need to spend further money litigating this matter when the source of the infringing wine has been severed, and Defendant has discontinued selling the infringing wine.

2. **If the parties were to go to trial on the remaining issue of Plaintiff's sales of Defendants' wine bearing the Dracula Legacy trademark, Defendants would lose.**

---

[4] Defendant Ramona Neamtu, who was also Dracula's Legacy 30(b)(6) witness at deposition, claimed they only sold 266 bottles.

Defendants might argue for the sake of arguing further that there is no likelihood of confusion, but their own actions would belie this argument, as well as their defense of fair use.[5] Notably, they stopped selling the accused wine once confronted with the infringement, as did the Romanian winery and as did the importer. Second, their infringement was intentional. They had been buying Plaintiff's VAMPIRE and DRACULA wine from Plaintiff's Florida distributor before they decided to create an infringing wine using the same trademarked word for wine, DRACULA.

The statutory fair use defense does not save Defendants when it comes to infringing Plaintiff's Dracula wine trademark because Defendants filed a trademark application for its Dracula Legacy wine. 15 U.S.C. § 1115(b)(4) provides the fair use defense to a party whose ''use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith **only to describe** the goods or services of such party, . . .'' *KP Permanent Make-Up v. Lasting Impression*, 125 S. Ct. 542 at 548 (2004) (emphasis added at "only to describe"). Defendants filing of a trademark application for Dracula's Legacy for wine conclusively defeats its fair use argument. They did

---

[5] If the Court would prefer, Plaintiff would gladly prepare a brief that would meet the summary judgment standard as to Defendants' infringement of Plaintiff's wine trademarks. Due to the summary judgment page limitations however, when filing its motion for partial summary judgment, Plaintiff choose to concentrate on eliminating Defendants' counterclaims and affirmative defenses, leaving no room for the likelihood of confusion analysis.

not use Dracula's Legacy "only to describe" but instead as a trademark. That's why they filed a trademark application.

So, if this case went to trial, Plaintiff believes Defendants would lose, and all parties would incur further legal fees, and a week of court time would be used up over a matter that should not be tried since it is unlikely Defendants will again attempt to infringe Plaintiff's trademarks for wines and spirits.

### 3. There are no prevailing parties in this case.

Defendants intentional trademark infringement of Plaintiff's trademarks for wine and their filing of a trademark application for wine using Plaintiff's trademark has caused both parties to incur legal fees. Plaintiff has obtained its goal of stopping the infringement of its trademarks for wine as described in Counts 1 and 2 of the Second Amended Complaint. From Plaintiff's point of view, Plaintiffs have prevailed. Nevertheless, a court need not determine a prevailing party in any event. Indeed, the Eleventh Circuit has held there are times where there is no prevailing party for the purposes of post-verdict cost and fee shifting. *Royal Palm Props., LLC v. Pink Palm Props*., LLC, 38 F.4th 1372, 1373–74 (11th Cir. 2022)

> Courts, unlike the NFL, are not in the business of declaring winners; they are in the business of settling legal disputes. And, sometimes, legal disputes do not have a clear winner (in legalese, a "prevailing party"). As such, courts are not required to declare a winner—or a "prevailing party"—in every case.

This is one of those cases where there is no prevailing party. And if there is no prevailing party, there is no need to consider if this is an extraordinary case under *15 U.S.C.*

8

*§ 1117* which provides, *"*The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The Supreme Court has refused to ''allow[ ] an award [of attorney fees] where there is no judicially sanctioned change in the legal relationship of the parties.'' *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res., 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)*. A ''defendant's voluntary change in conduct,'' the Supreme Court explained, ''although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change.'' *Id*. (emphasis in original). For the same reason, a plaintiff's voluntary decision to dismiss an action without prejudice also fails to confer prevailing-party status on a defendant. *Affordable Aerial Photograpy v. Prop. Matters USA,* 108 F.4th 1358, 1365 (11th. Cir. 2024) citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res., 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)*.

In this case, Plaintiff achieved its primary goal and was able to protect its trademark registrations for wine by filing this lawsuit against the Romanian winery, the importer and the Dracula's Legacy defendants. Unfortunately, after achieving that goal, Plaintiff was unable to resolve the remaining claims with the Dracula Legacy defendants, and their counterclaims for fraudulent registration stood in the way of Plaintiff requesting a dismissal pursuant to F.R.C.P. 41(a)(2). However, now that the Court has ruled in Plaintiff's favor on those counterclaims for fraud, Plaintiff has been able to issue a covenant not to sue on the '444 Registration mooting the remainder of the Defendants second counter claim and file this motion to dismiss.

9

### 4. Defendants' litigation tactics were intimidating and undermined the integrity of the judicial process.

Defendants refused reasonable settlement demands in which this case could have been settled more than a year ago with a simple agreement not to infringe Plaintiff's trademarks on wine or alcohol beverage products and a payment of just $2000. Instead, Defendants have persistently threatened Plaintiff with their demand for Plaintiff to pay their ever-increasing attorney's fees as they ran up the litigation costs through their intimidation campaign and unreasonable positions. For example, despite refusing to stipulate that no reasonable juror could find for their fraud counterclaims, Defendants now want Plaintiff to pay them their attorney's fees that Defendants allegedly incurred to lose Plaintiff's motion.

If any finding of exceptionality would be warranted, this Court should find it is exceptional due to Defendants' outrageous, libelous and threatening litigation tactics previously complained of.[6] Defendants' intimidating tactics has led Plaintiff's witnesses Don Lewis and Sammy Moir to ask Mr. Machat if it's safe to go to Tampa for trial, and Mr. Machat's family has expressed concern for Mr. Machat's safety. Quite frankly, the concern that the defendants might act as if they are the Romanian mafia is one of the factors in the back of the mind of Plaintiff's witnesses and an intangible factor in Plaintiff's request for a

---

[6] Dkt. No. 70-6, bottom paragraph describes the threats by Defendants, in particular Vasile Neamtu rolling up his sleeve and yelling at Plaintiff's representative, Michael Machat, to step out of the room with him – just the two of them alone at the mediation.
Dkt. No. 70 at paragraphs 10-12 describes the threatening intimidating behavior of Defendants who after the mediation, directed the mailing of libelous postcards to Mr. Machat's home and neighbors, and to his offices, and the libelous website specially created to falsely label Machat a vexatious litigant which included a picture of the building directory at Machat's office to scare and intimidate Machat and his family. Dkt. No. 70-3 and Dkt. No. 70-4.

10

voluntary dismissal. If the case went to trial and Defendants were forced to change the name of their wine bar who knows how they would erupt.

Nevertheless, now that Defendants have stopped selling the infringing wine and are unlikely to do so in the future (since their source has been cut-off) and now that Plaintiff has given Defendants a covenant not to sue, the dispute is moot, warranting dismissal of the remaining portion of the counterclaim for abandonment for lack of subject matter jurisdiction. Plaintiff at the same time requests dismissal of its claims for trademark infringement without prejudice.

### 5. Defendants anticipated argument that only they were forced to incur legal fees erroneously assumes Plaintiff's counsel's time is free.

Finally, Defendants anticipated argument that they have been forced to incur attorney's fees while Mr. Machat, both an attorney and principal of Plaintiff Vampire Family Brands, has been able to freely pursue litigation at no cost belies the economic reality of the situation. Mr. Machat is a practicing attorney and the time he has spent protecting Plaintiff's trademarks comes at a cost. For example, just dealing with the pretrial matters in this case has caused Mr. Machat to request an attorney colleague of his, Jeremy Freidman to prepare an opposition to a demurrer in *Feldman v. Haute, LLC,* Case No. 25STCV13613 filed in the Los Angeles Superior Court because Mr. Machat did not have the band width to work on that opposition while working on this case. The Los Angeles Superior Court in a related case with the same client, Sonia Feldman, awarded Ms. Feldman attorney's fees for Machat's legal services. *Feldman v. Sawyer*, Case No. 23STCV26012, Order dated Dec 6, 2024. So quite the contrary to Defendants' repeated arguments, this

litigation is costing Plaintiff attorney's fees. And this does not include Plaintiff's outside counsel attorney fees. There is a cost to Plaintiff's counsel's time and if attorney fees were to be awarded at all, they should be awarded to Plaintiff calculated according to the Lodestar Method.

### D. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this case be dismissed without prejudice to either side and that all parties are to bear their own costs and expenses.

DATED this 28th day of October 2025.

Respectfully submitted by:

*/s/ Michael Machat*
Michael Machat, Esq. CA Bar No. 109475
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Suite 250
West Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com
*Counsel for Plaintiff*

Daniel B. Ravicher, Esq.
Florida Bar No. 102809
**ZEISLER PLLC**
80 SW 8th St Ste 3110
Miami, FL 33130
Tel.: (786) 505-1205
dan@zeisler-law.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2025, a true and correct copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.

*/s/ Michael Machat*
Michael Machat

## LOCAL RULE 3.01(G) CERTIFICATION

Plaintiff certifies that it has conferred with Defendants via a telephone conference on October 28, 2025. Defendants oppose the motion.

*/s/ Michael Machat*
Michael Machat

2