IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

_____

**VAMPIRE FAMILY BRANDS, LLC**

        Plaintiff,

v.                                      Case No. 8:23-cv-01014-TPB-TGW

**DRACULA'S LEGACY, LLC,**
**ELENA RAMONA NEAMTU, and**
**VASILE RELU NEAMTU,**

        Defendants.
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S TIME SENSITIVE MOTION TO DISMISS WITHOUT PREJUDICE [DKT. 111]**

Plaintiff's Motion to Dismiss (the "Motion") grossly mischaracterizes his intent for seeking dismissal. Contrary to Plaintiff's representation, he did not "successfully stop" Defendants from selling the allegedly infringing wine through his settlements with the dismissed defendants. Instead, Defendants themselves voluntarily stopped selling the allegedly infringing wine and notified Plaintiff of same *prior to the filing of this lawsuit*. *See* **Exhibit A**. Defendants voluntarily stopped selling their Dracula's Legacy wine because they knew that the revenues earned from their nominal sales of the wine did not warrant federal litigation. Plaintiff still wasn't satisfied and instead initiated a campaign to shut down Defendants' bar due to its name and because Defendants refused to enter into a license agreement with Plaintiff. *See* **Exhibit B**, Declaration of Elena Ramona Neamtu

1

("Ramona Decl.") at ¶¶ 10-11. Since the filing of this litigation, Plaintiff has continued to bully Defendants, who are a small family business, by way of driving up their litigation costs while Plaintiff serves as counsel for himself. Plaintiff has spent 2 years demanding more than $1,000,000 in damages from Defendants. *See* Sep. 12, 2024 Hr. Tr. at 11:10-12. Now, a month before trial Plaintiff wants to drop this litigation to avoid the cost of having to engage his own trial counsel after having realized that his campaign to shut down Defendants' wine bar or force a licensing fee has failed. Simply stated, Plaintiff demanded ransom which Defendants refused to pay. Like most bullies, Plaintiff has now turned tail because someone stood up to him. And he hopes to run off quietly without any consequences to the real harm he has caused to real people. The Court should not allow that.

Plaintiff knew Defendants stopped selling the allegedly infringing Dracula's Legacy house wine more than 2 years ago and misrepresents this point as some new fact to strengthen his late request for dismissal. Plaintiff's basis for now seeking dismissal due to the stoppage of the wine sales is simply not true. It was always his intent to try to shut down the Dracula's Legacy wine bar if they did not comply with his demands.

Plaintiff began this litigation campaign by suing just the bar (Dracula's Legacy LLC) and its 2 owners (husband and wife, Ramona and Max Neamtu). His lawsuit, like the dozens of similar other suits he's filed on behalf of his company, equates vampires and Dracula and claims that Plaintiff is the only one that may use them. While not readily recognized to a lay person (or even some litigators),

2

his boilerplate lawsuit (which he has used to exact numerous nuisance value settlements) even asserts a claim under the Lanham Act's dilution provisions, which is reserved only for trademarks that are "famous." *See* [Dkt. 1] at ¶¶ 56-60; 15 U.S.C. § 1125(c). While Plaintiff himself is an experienced litigator who knows his trademark registrations do not come anywhere close to the nationwide fame[1] required under 15 U.S.C. § 1125(c), he includes these allegations to beef up the complaint and make it more threatening. Indeed, he has a history of people quickly conceding to his litigation threats, and he hoped the act of filing a lawsuit would be sufficient to scare the Neamtus into paying him and signing up for his permission to use their heritage. They refused.

So, he ramped up the tension and added more defendants and more claims in his Amended Complaint. *See* [Dkt. 22]. Not only did he add the winery (SC Viile Budureasca SRL) and importer (Amavi Vinum, LLC), he added the Neamtu's college-aged son Robert as an additional defendant in the hopes the added pressure would force the Neamtus to just pay him. And he beefed up his allegations against the wine bar name and themes. *See e.g. id.* at ¶ 51 ("Moreover, Defendants' unlawful use of the name Dracula's Legacy[] as the name of their wine bar hinders, harms and interferes with Plaintiff's ability to protect and develop its VAMPIRE brand for bar and restaurant services."). He also added a claim under Florida's Deceptive and Unfair Trade Practices Act, seeking added leverage from that claim by way of its fee shifting provisions. Like the rest, those claims were

---

[1] "[T]rademark dilution claims are restricted to truly famous marks, such as Budweiser beer, Camel cigarettes, and Barbie dolls." *Dahon N. Am., Inc. v. Hon*, 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012); *see also Rolex Watch U.S.A, Inc. v. Roleks Grp., LLC,* 2023 WL 9950140, at *3 (M.D. Fla. June 21, 2023)

3

focused on the bar's name. *See id*. at ¶ 89 ("The Florida Defendants' engagement in (i) infringing Plaintiff's VAMPIRE and DRACULA marks; (ii) intentionally adopting and extensively using DRACULA and VAMPIRE in commerce in connection with restaurant and bar services…"); ¶ 90 ("Specifically, the Florida Defendants have adopted for use as the name of their wine bar a mark that is confusingly similar to Plaintiff's DRACULA and VAMPIRE marks…"). And seeing that his bluff on asserting a federal dilution claim had failed, he changed it to assert a claim under Florida's trademark statute. *See id*. at ¶¶ 101-106. Again, Plaintiff, an experienced trademark lawyer, knows the 13 trademark registrations he has asserted in this case are miles short of what the law would consider famous, but his litigation strategy was not premised on winning on the merits, but rather leveraging the cost of litigation to coerce compliance[2]. But the Neamtus refused to give into such tactics.

 Plaintiff has steadfastly maintained that this case was only ever about the bar name. He has known since prior to filing the lawsuit that the Defendants had stopped the wine sales. For example, in response to Defendants' argument that this case was never just about the allegedly infringing wine sales and that Defendants will never shut down their bar, Plaintiff made it a point to explain to the Court that he had a trademark registration for the Vampire mark that he could use to do so:

> **MR. POLLACK:** There's two components, whether we can have the bar and whether we can sell wine. I don't think they can shut down our bar. Whether

---

[2] As an experienced trademark practitioner and litigator, Plaintiff knows full well that a trademark litigation costs hundreds of thousands of dollars to defend. *See* Ramona Decl. at ¶ 17.

4

> or not we can sell a wine called Dracula's Legacy is a comparison of does his Dracula's Wine create some confusion with our Dracula's Legacy. That's a fact question that he's going to have to get some surveys, we're going to have to get some surveys.
> **THE COURT:** All right. I got it. Anything on this? Have you talked about -- I mean, I think he's probably right. He's allowed to run a bar. It may be the name of the bar. You can negotiate. You're not doing to be able to shut the bar down. Is there a way to figure this out quickly? I mean, you're personally involved. Have you talked to each other? Where are you on this?
> **MR. MACHAT:** By the way, we have trademark registrations for Vampire for bar and restaurant services as well. And there's intent to open up more of them.

Sep. 27, 2023, Hr. Tr. At 6:25-7:1-16. Now, after realizing that he will not succeed in shutting down Defendants' wine bar (which the Court made clear during the September 27, 2023, status conference), Plaintiff wants to suggest that he was only ever concerned about the wine sales and that he was successful in that effort (he was not).

Plaintiff's covenant not to sue with respect to his '444 Registration for the Vampire mark is a unilateral attempt to get rid of Defendants' counterclaim so it would not be heard by the jury at trial. Plaintiff's fear, rightfully so, is that the jury may rule in favor of Defendants and find that the '444 Registration should be cancelled due to his abandonment. Notably, Plaintiff's covenant not to sue makes no mention of Plaintiff's Dracula mark or other trademark registrations—intentionally leaving Plaintiff with plenty of ammunition to manufacture future claims against Defendants should they continue to refuse to do business with him. And Plaintiff ties this covenant to an attempted non-prejudicial dismissal in order to preserve that leverage for himself. The emotional and physical toll Plaintiff's tactics have had on Defendants is further evidence of why a non-prejudicial

5

dismissal would be harmful to Defendants. *See* Ramona Decl. at 15; *see* **Exhibit C** Declaration of Vasile Relu Neamtu ("Vasile Decl.") at ¶ 15.

Defendants agree that Plaintiff's claims are ripe for dismissal – the only dispute is what cost Plaintiff will have to pay for that. His Motion serves as his attempt to make it so there is no consequence whatsoever for this unnecessary litigation. That simply can't be correct. Rule 41 makes clear that after a party has abused the litigation process to try to exert an improper resolution on a defending party, the Court is fully empowered to dismiss weak claims with prejudice or condition dismissal on Plaintiff paying for the harm he has caused by paying Defendants for the attorneys' fees and costs they were forced to incur to defend this hollow lawsuit. While Defendants will fully comply with L.R. 7.01 and file their motion to have attorneys' fees awarded under both the Lanham Act (15 U.S.C § 1117) and 28 U.S.C. § 1927 (and potentially FDUPTA) within 14 days of entry of any judgments here, Defendants also maintain that it would be entirely appropriate to dismiss Plaintiff's claims here with prejudice or require compensation pursuant to Rule 41 for the unnecessary and wasteful harm Plaintiff has unilaterally caused.

## I.     LEGAL STANDARD

"A voluntary dismissal without prejudice is not a matter of right." *Fisher v. Puerto Rico Marine Mgmt., Inc.*, 940 F.2d 1502, 1502 (11th Cir. 1991). The decision to allow dismissal of an action under Rule 41(a)(2) is within the broad discretion of a district court. *See McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 857 (11th Cir. 1986). "[W]hen exercising its discretion in considering a dismissal without

prejudice, the court should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants." *Fisher*, 940 F.2d at 1503. "For Rule 41(a)(2) purposes, therefore, the plaintiff's interest in dismissal is of little concern." *Herkemij & Partners Knowledge, B.V. v. Ross Sys., Inc.*, 2006 WL 5328578, at *3 (N.D. Ga. June 12, 2006) (internal quotation marks and citation omitted). "To be more specific, the purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions, where appropriate." *Burgauer v. Premier Tr., Inc.*, 2025 WL 1795953, at *2 (M.D. Fla. June 30, 2025) (citing *Arias v. Cameron*, 776 F.3d 1262, 1268 (11th Cir. 2015)) (internal quotation marks omitted). Thus, "the district court must exercise its broad equitable discretion under Rule 41(a)(2) to weigh the relevant equities and do justice between the parties in each case, **<u>imposing such costs and attaching such conditions to the dismissal as are deemed appropriate</u>**." *McCants*, 781 F.2d at 857 (emphasis added); *see also Burgauer*, 2025 WL 1795953, at *2.

> When courts in this circuit have denied a plaintiff's Rule 41(a)(2) motion for dismissal without prejudice, several factors were frequently important to the decision. These factors include the length of time and amount of resources spent by the defendant litigating the case, dilatory tactics by the plaintiff, and whether the defendant had a motion for summary judgment pending when the dismissal was requested. *See Stephens v. Ga. Dept. of Transp.*, 134 Fed. Appx. 320, 323 (11th Cir.2005) (basing denial of plaintiff's motion to dismiss without prejudice on the fact that two years had passed between plaintiff's complaint and motion to dismiss, many motions were filed and discovery produced within that time, and defendant's pending motion for summary judgment constituted prejudice to the defendant); *Fisher*, 940 F.2d at 1503 (basing denial of plaintiff's motion to dismiss without prejudice on the time and expense already spent by the defendant on discovery and trial preparation, the late nature of the plaintiff's filings, and the potential negative effect on witness memories as evidence of plain prejudice to defendant); *Mosley*, 2005

> WL 2293567, at * 3 (denying plaintiff's motion for voluntary dismissal because, in addition to the considerable time and money the defendant spent defending the case, the Court extended discovery numerous times for the Plaintiff to no avail, and the Defendant had already filed a motion for summary judgment when plaintiff filed its voluntary dismissal); *McBride v. JLG Indus., Inc.*, 2005 WL 2293566, at *3 (M.D.Ga. Sept. 20, 2005) (same). Courts are more likely to deny a voluntary dismissal where the plaintiff has been dilatory in conducting the litigation.

*Herkemij & Partners Knowledge, B.V. v. Ross Sys., Inc.*, 2006 WL 5328578, at *4 (N.D. Ga. June 12, 2006). While the Eleventh Circuit has not endorsed or required any list of factors, it has explained that "a district court must 'weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate.'" *Potenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1256 (11th Cir. 2001) (quoting *McCants*, 781 F.2d at 857).

## II.  ARGUMENT

### A.  Plaintiff is a Serial Litigant

Plaintiff, who is really just a California attorney named Michael Machat, is a serial litigant that has sued dozens of entities for supposed infringement of its supposed trademark rights to in the marks "Dracula" and "Vampire." Plaintiff does not have any employees. *See* **Exhibit D**, Machat Depo Tx. at 16:5-17:19. Mr. Machat, as Plaintiff's principal and attorney, simply uses his legal skills to demand anyone using Dracula or vampire themes pay him nuisance settlements or sign up to license agreements. Because these defendants do not have any real ties to Dracula and are using the name and character to conjure up Dracula images, these

8

other defendants agree to nuisance value settlements to quickly resolve the matter and avoid the financial and time expense of litigation.

Pursuing nuisance settlement payments from unsuspecting defendants has become a key part of Plaintiff's business model and has caused Plaintiff to develop the belief that his supposed trademark rights reach farther than they actually do. This system has worked for him historically because he himself is a lawyer and has no real enforcement costs. He tried that strategy here, but he picked on a Romanian family that did not just stumble upon Dracula as a gimmick, but rather lives and breathes Dracula as a critical part of their heritage and identity. This is why they selected the name DRACULA'S LEGACY, as they are building their own American dream and legacy on top of Dracula's. *See* Vasile Decl. at ¶ 5. Notably, prior to opening their wine bar in the United States, Defendants operated (and continue to operate) their wine bar in Romania under the same name (albeit in Romanian not English). *See* Ramona Decl. at ¶ 4.

Years before the filing of this lawsuit, Plaintiff learned of Defendants' wine bar and sought to sell wine products to Dracula's Legacy. *See* Ramona Decl. at ¶ 8. Plaintiff did not object to Defendants' bar name and tried to sell more wines to Defendants. For a period of time, Defendants bought Plaintiff's wine. Defendants eventually wanted to offer a house wine, which was only sold to customers inside their wine bars. Thus, while a customer was at Dracula's Legacy, he or she could order a glass of Dracula's Legacy. And, to honor their heritage, they wanted this

9

wine to come from Romania[3]. Upon learning that Defendants were offering their own authentic Romanian house wine under the Dracula's Legacy name, Plaintiff began demanding Defendants pay him a licensing fee or change the name of their wine bar. *See* Ramona Decl. at ¶¶ 9-10. Defendants refused to enter into such an agreement because the Dracula's Legacy name is culturally significant to them and pays homage to their heritage as Romanians. Defendants remained willing to compromise with Plaintiff out of fear of costly litigation and notified Plaintiff prior to the filing of the lawsuit that they were stopping the sales of their Dracula's Legacy house wine. *See* Ramona Decl. at ¶ 11. This wasn't good enough for Plaintiff – he knew he had stopped the limited wine sales, but he wanted Defendants to change the name of the bar or pay him a licensing fee to keep using it. So, he filed suit, knowing that the costs to him of doing so were minimal, but the defensive costs Defendants would bear might encourage them to just pay him to go away.

Plaintiff used every leverage technique he could devise to try to force Defendants to take a license and pay him money or change their name. He sued their suppliers. He sued their son. He added claims arguing unfair trade practices. He dug through Defendants' financial records. He maintained his damages were over $1,000,000 from the bar name and décor. Defendants stood up to all of these attacks because they wanted to protect their brand, their heritage, and their legacy. *See* Sep. 12, 2024, Hr. Tr. at 12:15-17 ("It is not free, Your Honor, but we take the

---

[3] Plaintiff is not a winery or wine maker. He buys wine from others and prints a Dracula label to put on it. His wines are sourced in California, not Romania.

10

risk. It's our pride, it's our heritage, it's something to fight for."); s*ee also* Ramona Decl. at ¶ 13; Vasile Decl at ¶¶ 5-7. And it's working, as they have built extremely well-received wine bars that the community has embraced. *See* Ramona Decl at ¶ 7 (noting 4.9-Star Google ratings from over 2,000 reviews). While Plaintiff has no employees, Defendants have grown their wine bars to employ 20 people here in the Tampa bay area. *See* Ramona Decl. at ¶18. Plaintiff should not be permitted to just walk away from the harm he has caused Defendants and their business.

### B. The Court Should Dismiss Plaintiff's Claims with Prejudice, or Condition Dismissal Upon The Payment Of Defendants' Attorney's Fees And Costs

Defendants' have expended significant effort and expense in defending this litigation for over 2 years despite having notified Plaintiff prior to the filing of the original complaint that they were stopping the sale of their house wine under the Dracula's Legacy name. *See Stephens*, 134 Fed. Appx. 320, 323 (11th Cir. 2005) (basing denial of plaintiff's motion to dismiss without prejudice on the fact that two years had passed between plaintiff's complaint and motion to dismiss, many motions were filed and discovery produced within that time, and defendant's pending motion for summary judgment constituted prejudice to the defendant). Plaintiff has acted in bad faith by haling Defendants into this litigation to extort a settlement payment despite knowing that Defendants had stopped selling the accused wine itself and would never change the name of their bar. *See* **Exhibit A**. Despite knowing that the allegedly infringing wine sales stopped more than 2 years ago, Plaintiff is only now seeking dismissal because he doesn't want to pay for counsel and recognizes he is likely to lose at least one trademark registration.

11

Plaintiff caused Defendants to engage in significant document discovery, depositions, two mediations, and summary judgment, in order to drive up their litigation spend all while knowing Plaintiff's spend was essentially nonexistent. Plaintiff argues that he incurred legal expenses because the time he devoted to this case forced him to hire counsel to assist with his other cases in California, but this is precisely the opposite of what he told the Court. *See* Sept. 12, 2024 Hr. Tx. at 7:4-11 ("THE COURT: So you're working for free, correct? MR. MACHAT: Pretty much … Takes up my time, but yes. THE COURT: I understand, but it's a very bad situation because he can – he can be unreasonable and not have to pay lawyers, all right? You're having to pay lawyers for this").

Plaintiff's late-found desire for the parties to avoid incurring further unnecessary litigation expenses comes only after Plaintiff spent weeks ignoring all of Defendants' attempts to work through the pretrial activities. Indeed, Plaintiff even spent the pre-trial time demanding further financial information from Defendants for him to use at trial, notwithstanding his claims to the Court through his motion.

### C. Defendants Would Be Prejudiced By Any Dismissal Without Prejudice Not Conditioned Upon Payment of Their Attorney's Fees and Costs

Ordering payment of Defendants' attorney's fees and costs is a proper "condition" for dismissal under Rule 41(a)(2). *See Young v. Roy's Rest.*, 2006 WL 2598962, at *2 (M.D. Fla. Sept. 11, 2006) (citing *Greenberg v. Centurion Inv. Group, Inc.*, 145 F.R.D. 610, 612 (S.D.Fla.1993) (noting that courts frequently require plaintiffs to pay the costs and fees defendants may have incurred in litigation

before granting such dismissals)). It is proper to require the plaintiff to pay fees where the defendants have expended considerable costs and the dismissal is without prejudice. *See Quillet v. Jain*, 2014 WL 12632907, at *1 n.1 (M.D. Fla. May 27, 2014) (citing *Herkemij*, 2006 WL 5328578, at *6 (granting plaintiff's motion for dismissal without prejudice, but awarding fees and costs to defendant who expended more than two years litigating claims)); *see also McCants*, 781 F.2d at 860. Should the Court be included to grant a non-prejudicial dismissal, Defendants request that such dismissal be conditioned upon payment of Defendants' attorney's fees and costs.

### 1. Defendants Would Lose A Substantial Right By Any Dismissal Without Prejudice

The crucial question is whether Defendants would lose any substantial right by the dismissal. *See Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001). Throughout these proceedings Defendants have made clear they intend to pursue recovery of their attorney's fees and cost due to Plaintiff's bad faith pursuit of this litigation despite having knowledge that Defendants voluntarily stopped the allegedly infringing wine sales prior to the filing of the complaint and that there is no basis for them to shut down their wine bar. Plaintiff now appears to have received outside counsel who presumedly has informed him of the potential liability he faces should this case proceed to trial and now seeks to use a Rule 41(a)(2) dismissal as his escape hatch at the eleventh hour. To grant Plaintiff a non-prejudicial dismissal without attaching any conditions to reimburse Defendants their attorney's fees and cost, would cause Defendants to lose a

13

substantial right since they may be precluded from prevailing in their fee motion under the Lanham Act, FDUTPA, and 28 U.S.C. § 1927. Notably, Plaintiff has already employed this tool once before, when it threw away its Florida Deceptive and Unfair Trade Practices claim because it learned that the fee shifting provisions there would likely expose it to a fee award here. *See* [Dkt. 91]. Through that briefing, Defendants explained the legal prejudice they would suffer by having had to defend against the FDUPTA claim. *See* [Dkt. 86]. While not persuaded, the Court reminded Plaintiff that it was exposed to a potential fee award under 28 U.S.C. § 1927. *See* [Dkt. 91] at 3 n.1.

Additionally, dismissal without prejudice would preclude Defendants from the relief sought in their counterclaims. *See Farmaceutisk Laboratorium Ferring A/S v. Reid Rowell, Inc.*, 142 F.R.D. 179, 181 (N.D. Ga. 1991) (granting plaintiff's motion for dismissal without prejudice conditioned upon plaintiff making defendant whole for expense that turns out to be unnecessary to litigating defendant's counterclaims in the action). Defendants counterclaim seeks, *inter alia,* a declaration that Defendants' logo does not infringe any of Plaintiff's purported rights. *See* Counterclaim, [Dkt. 100] at 15 (Prayer for Relief ¶ 3). Defendants have incurred significant expense in developing their counterclaims for cancellation of Plaintiff's trademark registrations and declaratory judgment of non-infringement, which substantially overlaps with their overall defense strategy and were necessary to safeguard against Plaintiff's threat of shutting down Defendants' wine bar altogether.

Plaintiff's unilateral covenant not to sue with respect to its purported Vampire mark does nothing to compensate Defendants for the time and expense incurred in developing their counterclaim theories during discovery and defending them in response to Plaintiff's motion for summary judgment. Even worse, Plaintiff is not jettisoning this entire litigation dispute because of any altruistic motives to save any third parties from anything, but purely for self-serving reasons that he doesn't want to have to spend money on an attorney and knows that the likelihood of his trademark registration surviving trial is low. He'd rather keep that piece of paper from the Trademark Office in his file so he can continue to assert it against more mom & pop businesses and shake them down for nuisance settlements.

Plaintiff also used the Vampire registration to persuade the Trademark Office to reject Defendants' trademark application for their logo. That proceeding in the Trademark office is currently suspended pending the resolution of this litigation. Defendants would also be able to use a prejudicial dismissal here as a basis for the Trademark Office to withdraw to grant the registration of Defendants'  logo for restaurant and bar services.

Plaintiff's claims should be dismissed with prejudice, and Plaintiff should be obligated to pay for the harm he has caused, either under Rule 41's

discretionary standards permitting the Court to condition dismissals on such payment, or pursuant to Defendants' forthcoming motion for fees.

### D. Dismissal With Prejudice Would Guarantee Defendants' Prevailing Party Status

Under the fee-shifting provision of the Lanham Act, district courts may exercise their discretion to award reasonable attorney fees to the prevailing party in exceptional trademark infringement cases. *See CarMax Auto Superstores, Inc. v. StarMax Fin., Inc.*, 192 F. Supp. 3d 1279, 1282 (M.D. Fla. 2016). To achieve "prevailing party" status there are two requirements: (1) the party must be awarded some relief on the merits of its claim by the court and (2) the party must be able to point to a resolution of the dispute which materially altered the legal relationship between the parties. *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1376 (11th Cir. 2022). Defendants believe they have already established this standard, as Plaintiff's covenant not to sue, combined with his admissions in his summary judgment briefing that he pretends he's no longer going after the bar name or décor, has materially altered the legal relationship between the parties. Indeed, that change in legal relationship is precisely why Defendants stood up to Plaintiff's tactics. While the sales of a handful of bottles of wine were not worth fighting about, Defendants' heritage definitely was. *See* Sept. 12, 2024, Hr. Tr. at 12:15-17.

Should the Court grant dismissal of Plaintiff's claims with prejudice, Defendants would be afforded relief on the merits such that requirement (1) is clearly met. *See Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018)

16

(explaining that in *CRST Van Expedited, Inc. v. EEOC*, 136 S.Ct. 1642, 1651 (2016), the Supreme Court "held that a favorable judgment on the merits is not necessary for a defendant to be deemed a prevailing party for purposes of statutory fee-shifting" under the exceptional case standard of the Patent Act); *see also Carmax*, 192 F. Supp. 3d at 1283 (noting that the fee-shifting provisions under the Lanham and Patent Acts are nearly identical). Requirement (2) is further met on two fronts. First, a prejudicial dismissal would materially preclude Plaintiff from similar claims against Defendants in the future. When pressed on this point during the conferral process, Plaintiff's justification for pursuing a non-prejudicial dismissal was that Defendants should just trust him that he doesn't want to sue them again. Second, Plaintiff's own covenant not to sue materially alters the parties' relationships because he precludes himself from pursuing claims against Defendants based on the '444 Registration. Whether or not Defendants' counterclaim has been rendered moot has no bearing on their status as prevailing parties.

As indicated above, within 14 days of entry of a judgment, Defendants will pursue their motion for attorney fees. Defendants are not seeking any type of double recovery – they just want to be made whole for having had to defend against this facially overreaching claim. Defendants maintain they are entitled to such relief under Fed. R. Civ. P. 41, 28 U.S.C. § 1117, and 28 U.S.C. § 1927 as Plaintiff unreasonably and vexatiously has multiplied these proceedings over the last 2 years.

### E.  Plaintiff's Characterization of Defendants Conduct Throughout These Proceedings is Blatantly False and Libelous

Plaintiff's bad faith and animus towards the Defendants continues to be confusing. He has manufactured a false narrative for himself as to what transpired at mediation, and he keeps telling the Court (and others) that Defendants were somehow threatening. His motion now compares Defendants to the mafia, which would be a libelous statement that Plaintiff will simply seek shelter from using the litigation privilege. Such animus from Plaintiff (while not a member of this bar, still a member of California's Bar and practicing here with the Court's permission) directed towards lay defendants (for whom English is not their native tongue) is simply outrageous. Plaintiff was not threatened at mediation. Plaintiff did not call law enforcement or run scared out of the building. Plaintiff sat through a 6+ hour mediation and then, notwithstanding that the parties had a deal in principle, without any explanation or comment (to anyone, including the mediator), Plaintiff simply walked out without saying goodbye to anyone. Plaintiff's attempt to cast himself as a victim while he has put Defendants through an expensive 2-year litigation in the hopes they would give into his litigation overreach is objectively outrageous. Plaintiff should not be able to avoid the harm he has cause by way of a non-prejudicial dismissal without consequence.

## CONCLUSION

Defendants respectfully request that any dismissal be granted with prejudice, or conditioned upon Plaintiff reimbursing Defendants their attorney's fees and costs, and any other relief the Court deems just and proper.

                                                    Respectfully submitted,

Date: November 7, 2025                  */s/ Woodrow H. Pollack*
                                                    Woodrow H. Pollack
                                                    Lead Counsel
                                                    Florida Bar No. 26802
                                                    Brian Paul
                                                    Florida Bar No. 1018684
                                                    **SHUTTS & BOWEN, LLP**
                                                    4301 W Boy Scout Blvd
                                                    Suite 300
                                                    Tampa, FL 33607
                                                    (813) 463-4894
                                                    wpollack@shutts.com
                                                     bpaul@shutts.com

                                                   *Counsel for Defendants*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on <u>November 7, 2025</u> a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.

                                                   */s/ Woodrow H. Pollack*
                                                   Woodrow H. Pollack